**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**HUBERT THARPE,**

      **Petitioner,**

**v.**                          **Case No.  4:14cv263-WS/CAS**

**JULIE L. JONES, Secretary,
Florida Department of Corrections,**

      **Respondent.**
_____/

## REPORT AND RECOMMENDATION TO DENY § 2254 PETITION

On May 30, 2014, Petitioner Hubert Tharpe, proceeding pro se, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  ECF No. 1.  The Respondent was directed to file an answer, motion, or other response, ECF No. 5, and the answer with attachments was filed on January 22, 2015.  ECF No. 12.  Petitioner's motion for appointment of counsel was preliminarily denied on February 24, 2015.  ECF No. 17.  Petitioner filed a reply on June 11, 2015.  ECF No. 21.

The matter was referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Northern District of Florida Local Rule 72.2(B).  After careful consideration of all issues raised, the undersigned has determined that no evidentiary

hearing or appointment of counsel is required for disposition of this case.
*See* Rule 8(a), R. Gov. § 2254 Cases in U.S. Dist. Cts.  For the reasons
stated herein, the pleadings and attachments before the Court show that
Petitioner is not entitled to federal habeas relief, and this § 2254 petition
should be denied.

## Background and Procedural History

By information filed in case number 07-034CFA in the circuit court of
the Second Judicial Circuit, Liberty County, Florida, Petitioner was charged
with the following: Count I, lewd or lascivious exhibition on March 12, 2007,
in the presence of T.H., a person less than 16 years of age, by a person 18
years of age or older, in violation of section 800.04(7)(c), Florida Statutes;
Count II, attempting to engage in sexual activity on March 12, 2007, with
T.H., a person 12 years of age or older but less than 16 years of age by
oral contact with the sexual organ of another, in violation of section
800.04(4)(a), Florida Statutes; and Count III, contributing to the
delinquency of a minor, T.H., a child, on March 12, 2007, in violation of
section 827.04(1), Florida Statutes.  Ex. B.[1]

---

[1] Hereinafter, all citations to the State court record, "Ex. –,"refer to exhibits submitted
with Respondent's answer.

Case No. 4:14cv263-WS/CAS

Petitioner proceeded to a jury trial on January 22, 2008, before Judge Ralph Smith, Jr., in Liberty County, at which Petitioner, the only defense witness, testified.  Ex. C (trial transcript).  The jury found Petitioner guilty as charged on all counts.  Ex. D.  In a judgment and sentence rendered March 14, 2008, Petitioner was sentenced as a prison release reoffender pursuant to section 775.082(8)(b), Florida Statutes, to a term of 15 years on Count I, a concurrent term of 5 years on Count II, and  a concurrent term of 365 days on Count III, with credit for 365 days time served.  Ex. G

Appellate counsel filed an <u>Anders</u>[2] brief in Petitioner's direct appeal from the convictions and sentences in which counsel asserted that he could not make a good faith argument of error.  Ex. I.  Pursuant to leave of court, Ex. J, Petitioner filed a pro se brief, Ex. K., and the state First District Court of Appeal affirmed per curiam without opinion on October 19, 2009.[3]  Ex. L. No motion for rehearing was filed and the mandate was issued on November 16, 2009.  Ex. L at 2.  *See* <u>Tharpe v. State</u>, 22 So. 3d 75 (Fla. 1st DCA 2009) (table).

---

[2] <u>Anders v. California</u>, 386 U.S. 738, 744 (1967) (holding that when appointed counsel finds the appeal to be frivolous, counsel should so advise the court after a conscientious examination of the record and reference to anything in the record that might support an appeal, and counsel may request permission to withdraw).

[3] Petitioner raised one claim of error in his pro se brief on direct appeal: (1) whether the trial court's failure to order a mental evaluation of Petitioner denied the court and jury exculpatory evidence that would have shown him to be the victim in the case.  Ex. K.

Petitioner filed a motion under Florida Rule of Criminal Procedure 3.850 on March 8, 2010.[4]  Ex. M.  The motion alleged two grounds for post-conviction relief: (1) trial counsel was ineffective in failing to interview or call witnesses; and (2) trial counsel was ineffective in failing to investigate and prepare any type of defense.  Ex. M at 4, 7.  An evidentiary hearing was held on the claims on October 3, 2011.  Ex. O.  The Rule 3.850 motion was denied by order entered October 17, 2011.  Ex. Q.

Petitioner, proceeding pro se, appealed to the state First District Court of Appeal, Ex. S, which affirmed per curiam without opinion on July 15, 2013.  Ex. V.  Petitioner's motion for a written opinion was denied on September 25, 2013, and the mandate was issued on October 11, 2013. Ex. W, V at 2.  *See* Tharpe v. State, 121 So. 3d 1042 (Fla. 1st DCA 2013) (table).

As indicated above, Petitioner filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in this Court on May 30, 2014, ECF No. 1, raising two grounds for relief:

> (1) The trial court failed to order and have conducted a mental evaluation of Petitioner which deprived the jury of exculpatory evidence and would have caused the charges to be dismissed.

---

[4] The motion is undated and the mailbox stamp is illegible. Respondent indicates the motion was filed on March 8, 2010, which is the date of filing with the clerk of the circuit court.  The post-conviction court's order denying relief states that the motion was filed March 8, 2011, which was an error.

(2) Trial counsel was ineffective in failing to interview and call witnesses who could have exonerated Petitioner, thereby denying Petitioner his constitutional rights.

## Analysis

Pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), federal courts may grant habeas corpus relief for persons in state custody.  Section 2254(d) provides, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  *See, e.g.,* Cullen v. Pinholster, 563 U.S. 170, 181 (2011); Gill v. Mecusker, 633 F.3d 1272, 1287 (11th Cir. 2011).  "This is a 'difficult to meet' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'"  Cullen, 563 U.S. at 181 (quoting Harrington v. Richter, 562 U.S. 86, 102 (2011), and Woodford v. Visciotti, 537 U.S. 19, 24 (2002)).

This Court's review "is limited to the record that was before the state court that adjudicated the claim on the merits."  Cullen, 563 U.S. at 181.

"It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions," and "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).  *See also* Swarthout v. Cooke, 562 U.S. 216, 222 (2011) ("[W]e have long recognized that 'a "mere error of state law" is not a denial of due process.' " (quoting Engle v. Isaac, 456 U.S. 107, 121, n.21 (1982))).

Where federal claims are properly raised in a habeas proceeding, "[b]efore a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court."  O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); Title 28 U.S.C. § 2254(b).  In order for remedies to be exhausted, "the petitioner must have given the state courts a 'meaningful opportunity' to address his federal claim."  Preston v. Secretary, Florida Dep't of Corr., 785 F.3d 449, 457 (11th Cir. 2015) (quoting McNair v. Campbell, 416 F.3d 1291, 1302 (11th Cir. 2005)).  The petitioner must have apprised the state court of the federal constitutional claim, not just the underlying facts of the claim or a "somewhat similar

state-law claim."  Snowden v. Singletary, 135 F.3d 732, 735 (11th Cir.

1998).

For claims of ineffective assistance of counsel, the United States

Supreme Court has adopted a two-part test:

> First, the defendant must show that counsel's performance was
> deficient.  This requires showing that counsel made errors so
> serious that counsel was not functioning as the "counsel"
> guaranteed the defendant by the Sixth Amendment.  Second,
> the defendant must show that the deficient performance
> prejudiced the defense.  This requires showing that counsel's
> errors were so serious as to deprive the defendant of a fair trial,
> a trial whose result is reliable.

Strickland v. Washington, 466 U.S. 668, 687 (1984).  To demonstrate

deficient performance, a "defendant must show that counsel's performance

fell below an objective standard of reasonableness."  *Id.* at 688.  To

demonstrate prejudice, a defendant "must show that there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different."  *Id.* at 694.  "A reasonable

probability is a probability sufficient to undermine confidence in the

outcome."  *Id.*  For this Court's purposes, "[t]he question 'is not whether a

federal court believes the state court's determination' under the Strickland

standard 'was incorrect but whether that determination was

unreasonable—a substantially higher threshold.' "  Knowles v. Mirzayance,

556 U.S. 111, 123 (2009) (quoting Schriro v. Landrigan, 550 U.S. 465, 473

(2007)).  "And, because the <u>Strickland</u> standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard."  <u>Knowles</u>, 556 U.S. at 123.  It is a "doubly deferential judicial review that applies to a <u>Strickland</u> claim evaluated under the § 2254(d)(1) standard."  *Id.*

## Ground 1: Failure to Order a Mental Evaluation

Petitioner first contends that the trial court's failure to order a mental evaluation, which would have disclosed that he is mentally retarded and illiterate, denied him exculpatory evidence, resulting in a denial of due process.  ECF No. 1 at 7.  Petitioner argues that had he been evaluated prior to trial and found to lack capacity or suffer from intellectual disability, this would have supported his claim that the alleged victim planned to falsely accuse Petitioner in order to send him to jail so the victim could burglarize the mobile home where Petitioner lived.  ECF No. 1 (Exhibit A to petition).  He argues that an evaluation would have shown that the alleged victim, a 13-year-old, was actually the smart one and Petitioner was not competent enough to realize the victim's plan to falsely accuse him in order to burglarize the mobile home.

The facts as testified to at trial by the alleged victim were that on the day of the alleged offense, he saw Petitioner, whom he knew of from the

neighborhood, fishing in the river and joined him there.  After a while, he and Petitioner went to Petitioner's mobile home to have some food, and while there, Petitioner gave T.H. an alcoholic beverage and, after displaying his genitals to the victim, asked him to engage in sexual acts. Ex. C at 17-35.  It was disclosed at trial that that the victim did burglarize Petitioner's mobile home after Petitioner was imprisoned, a fact that was admitted during the victim's trial testimony.  Ex. C at 33, 34.  In closing argument, trial counsel argued that the victim had a reason to make up the story because he went back and burglarized the mobile home.  Ex. C at 120.  On appeal from his convictions and sentence, Petitioner unsuccessfully raised a similar claim that he should have had a mental evaluation in order to support his defense that he was "mentally retarded" and was actually the victim of the teenager's plot to remove him from the mobile home so the victim could burglarize and rob it.  Ex. K at 9.

On direct appeal and in this Court, Petitioner cites a portion of transcript to support his allegation that he informed the trial court of his need to be evaluated.  However, as Respondent correctly notes, it was not at trial but at sentencing, which occurred March 14, 2008, that Petitioner stated: "I'm not all there and sort of illiterate and all."  Ex. F at 5.  He also stated, "See, I need to be evaluated.  I don't understand what they are

saying, sir.  But I know I am innocent, sir."  Ex. F at 6-7.  The following also

transpired:

> THE DEFENDANT: Your Honor, can I ask you to please the
> Court, send me to have me evaluated before you sentence me
> sir, and have me another lawyer present, sir?  In the name of
> Jesus, would you?
>
> THE COURT:  No reason for evaluation.  You will have a
> different lawyer to do the appeal for you.

Ex. F at 9.  The state appellate court affirmed this ruling when Petitioner

appealed.  Ex. V.

The request for evaluation was not made prior to or during trial and

thus would not have provided exculpatory evidence or proof of intellectual

disability that Petitioner contends would have been exculpatory and would

have resulted in his exoneration.  Further, Petitioner's testimony and

conversations with the court during trial demonstrated that although he

advised the court he could not read or write, he demonstrated a "rational as

well as factual understanding of the proceedings against him."  *See* Dusky

v. United States, 362 U.S. 402, 402 (1960).  Petitioner's testimony at the

evidentiary hearing on his motion for post-conviction relief also disclosed

that he could understand the questions of counsel, recall facts and dates of

occurrences, discuss his interactions with his trial counsel, and explain how

he had obtained a witness affidavit relevant to his claim in a clear, understandable manner.  Ex. O at 31-38.

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Woods v. Etherton, 136 S. Ct. 1149, 1150 (2016) (quoting Harrington, 562 U.S. at 101 (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004))).  "The state court decision must be 'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.' " Woods, 136 S. Ct. at 1150 (quoting White v. Woodall, 134 S. Ct. 1697, 1702 (2014)).  Relitigation of claims adjudicated on the merits in state court is barred subject only to the exceptions in 28 U.S.C. § 2254.  Harrington, 562 U.S. at 99.  Petitioner has failed to demonstrate that the trial court's failure to have him evaluated for competency to stand trial—or the appellate court's adjudication of this claim on appeal—was contrary to, or involving an unreasonable application of, clearly established federal law as determined by the Supreme Court, or that it resulted in an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d).

For these reasons, relief on Ground 1 should be denied.

## Ground 2: Counsel's Failure to Investigate and Call Defense Witness

In this claim, Petitioner contends that his trial counsel provided ineffective assistance by failing to interview and call certain defense witnesses who Petitioner alleges could have exonerated him.  ECF No. 1 at 5.  He argues that in one of the limited conversations he had with counsel prior to trial, Petitioner informed counsel of several witnesses who could assist in the defense case.  Petitioner cites witnesses Trevor Harvell, who was attempting to prepare an affidavit saying that the victim bragged about "setting up" Petitioner; Berry Webb, who would testify that the victim was fabricating the allegations for personal gain; and Patricia Arnold, a store clerk who could have testified that Petitioner did not buy a Smirnoff drink when he and the alleged victim went to the store and that the victim admitted he was setting up Petitioner.  ECF No. 1 (Exhibit B to petition).  In his post-conviction motion, Petitioner cited potential witnesses Berry Webb, Trevor Harvell, and "Tishie Arnold," but made no mention of Arnold's proposed testimony concerning the purchase of the alcoholic beverage. *See* Ex. M at 4.

At the post-conviction evidentiary hearing, at which Petitioner was represented by counsel, witnesses Trevor Harvell, Mildred Castleberry, Betty Keith, trial counsel Zachary Ward, and Petitioner testified.  Ex. O.

Berry Webb and Patricia Arnold were not called to testify.  The post-

conviction court denied the claim of ineffective assistance, stating the

following in its order denying relief:

> During the evidentiary hearing, the defense presented the testimony of Mr. Trevor Harvell.  Mr. Harvell testified that he knew the defendant and the accuser.  Mr. Harvell at some point wrote a letter stating the victim was lieing (sic) and was willing and available to so testify.

> On cross examination, Mr. Harvell admitted that he knows the defendant from jail because he was Mr. Tharpe's roommate in jail.  During the evidentiary hearing Mr. Harvell was much more equivocal and vague as to what he knew about Mr. Tharpe's case and accuser.  According to Mr. Harvell's testimony in the evidentiary hearing, he only heard the accuser state words to the effect of "I'm the reason Mr. Tharpe is in jail because I found out he was a sex offender."  Mr. Harvell also admitted that he is currently serving a five year DOC sentence and has at least seven felony convictions.

> During the evidentiary hearing, the defense called Ms. Mildred Castleberry, the defendant's mother.  Ms. Castleberry testified that she asked Mr. Ward why he did not call more witnesses at trial and Mr. Ward said, "you don't need them."

> During the evidentiary hearing, the defense called Ms. Betty Keith, the defendant's first cousin.  Ms. Keith testified that she discussed witnesses with Mr. Ward and had essentially the same discussion as Mr. Tharpe's mother.

> Mr. Tharpe testified during the evidentiary hearing that Mr. Ward never came to see him at the jail.

> The prosecution presented the testimony of Mr. Zachary Ward, Mr. Tharpe's trial counsel.  Mr. Ward testified to his eleven years of work as a lawyer, nearly all practicing criminal law.  Mr. Ward testified that he met with Mr. Tharpe and that Mr. Tharpe never provided him with any letter from Mr. Harvell.  Mr. Ward testified that he discussed Mr. Harvell with Mr. Tharpe and his family and attempted to locate Mr. Harvell but could not.

Mr. Ward testified that even if he had found Mr. Harvell he would likely not have called him as a witness because of his ambiguous testimony and extensive criminal record. Mr. Ward testified that he decided not to call the other witnesses because, although they might impugn the accuser's general veracity, they also placed the accuser alone with Mr. Tharpe in Mr. Tharpe's trailer at the time of the alleged offense. Mr. Ward also testified that he presented a vigorous defense on Mr. Tharpe's behalf including excluding Williams Rule evidence and successfully pursuing admission in evidence of the accuser's burglary of Mr. Tharpe's trailer.

CONCLUSION

I conclude that Mr. Tharpe satisfied neither prong of the Strickland standard. Mr. Tharpe failed to prove either that Mr. Ward was ineffective or that there is any reasonable probability of a different outcome even if Mr. Ward called additional witnesses.

Ex. Q. Denial of this claim was affirmed by the state First District Court of Appeal. Ex. R.

Respondent contends that Petitioner abandoned his claim concerning potential witness Berry Webb by failing to allege on appeal any ineffectiveness of counsel in failing to call Barry Webb to testify. ECF No. 12 at 22. Respondent argues that any claim relating to Berry Webb and claims relating to Patricia Arnold about alcoholic beverages Petitioner may have purchased are unexhausted and procedurally defaulted. ECF No. 12 at 24. On the merits, however, Respondent contends that with deference given to the findings of fact and credibility determination of the post-conviction court, Petitioner has failed to show that the state court

adjudication results in an unreasonable determination of facts in light of the evidence presented in the state court proceeding.  ECF No. 12 at 27.

Petitioner did not present any testimony by Barry Webb or Patricia Arnold to establish what exculpatory testimony they would have been able to provide.  He presented only the testimony of Trevor Harvell, Mildred Castleberry, and Betty Keith.  Accordingly, the post-conviction court lacked competent, substantial evidence upon which it could have found that the testimony of Webb or Arnold was available and exculpatory.  Denial of relief as to claims related to Webb and Arnold was therefore proper.

As to the potential testimony of Trevor Harvell, the post-conviction court found that he only heard the victim say something like "I'm the reason Mr. Tharpe is in jail because I found out he was a sex offender."  Ex. Q. The post-conviction court also noted that Harvell was currently serving a five-year DOC sentence and has at least seven felony convictions, thereby placing his credibility at issue.

At the evidentiary hearing, Harvell identified a letter he said he had written and given to Petitioner's former counsel stating:

> [T.H.] told me how he had sent a sex offender to jail by making false accusations against him.  Also how he broke into his dwelling after the sex offender was falsely apprehended.  I wish to give a sworn statement and testify in court if necessary. . . .  I wish to give a sworn statement.

Ex. P.  Harvell testified at the hearing that he gave the letter to Petitioner in

the presence of his former lawyer and "then had it notarized and it was set

to go," although he was not contacted to testify.  Ex. O at 7, 9.  Harvell

testified he had been incarcerated with Petitioner in 2007 and shared a cell

for six or eight months.  Ex. O at 9.  He could not recall when he had

contact with the victim but that it was after he shared a cell with Petitioner.

Ex. O at 10.  When he related the conversation he said he had with the

victim, Harvell stated:

> A  . . . . And he told me, he said, Well, I'm the reason he's
> in there.  I'm the one that put him in there, because I found out
> he was a sex offender.  That's pretty much the extent of the
> conversation.
>
> Q So he said - - he told you he was the one that put him
> in there when he found out he was a sex offender?
>
> A Yes, sir.
>
> Q Anything else he said in that conversation?
>
> A No, sir.
>
> Q Okay.  What was your next contact with [T.H.] then
> after that?
>
> A  I believe I've had none since then, sir.
>
> . . . .
>
> A He stated, I'm the reason he went to jail.
>
> Q Okay.  And was that the extent of it?
>
> A Yeah, he said because he found out he was a sex
> offender.
>
> Q Okay, Anything else?
>
> A  Not to my recollection.

Q Okay.  Then, how did it come up that you had this meeting with - - and wrote this letter?

A Sir?

Q. How did it come up that you had this letter, came about, that you just identified as Defense 1?

A Well, because I guess he told me that he set it up, basically.  I mean, he didn't say it in so many words.

Q Okay.

A So I wrote a statement for Mr. Tharpe.

Q Okay.  So he didn't say that in so many words?

A No, sir.

Q Okay. So how did it - - what did you do then?

A You see [T.H.] comes over to your house, he - -

Q Then, how did you end up talking - -

A  My bond was revoked.

Q Okay.

A I came back to the Liberty County Jail - -

Q Uh-huh.

A  - -  and I wrote the statement.

. . . .

A  I wrote it on his behalf.  I wrote it and presented it to Mr. Tharpe.

Q Okay.  And how did that happen?  I mean, you know, that's just not something that you walk in the jail and you go around and write letters for everybody.  How did you end up in conversation with Mr. Tharpe?

A  I didn't end up on a conversation with him.

Q Okay.  How did it come about, then, that you wrote this letter?

A Because of what the boy told me.  That's how it came about.

Q You just volunteered to just talk to Mr. Tharpe and write this letter?

. . . .

A Yes, sir.  Yes, sir.

Q Then, what happens at that point?

A  He said he was going to present it to his lawyer - - Dennis Crowley.[5]  I'm not sure where we met him at, if we met him at the little - - where you see your lawyers, the little plexiglass - - I'm not sure where we met him.  He presented it to him and he said, You wrote this, and I said, Yes, sir, they got it notarized and that's the last I heard.

Ex. O at 13-16.

Petitioner's mother Mildred Castleberry testified at the evidentiary hearing that she was present during voir dire with Petitioner and his counsel when Petitioner asked trial counsel Ward why his witnesses were not going to be called to testify, and that Ward responded Petitioner did not need them.  Ex. O at 25.  The only witness names she could recall were Harvell and Arnold.  Ex. O at 27.  She did not know whether Petitioner had given the Harvell letter to trial counsel.  Ex. O at 25.  Betty Keith, Petitioner's cousin, testified that she was present with Ms. Castleberry and Petitioner when the discussion of witnesses occurred.  Ex. O at 27.  She

---

[5] Dennis Crowley was originally Petitioner's counsel before Ward was appointed as conflict counsel.  Crowley was also representing Harvell at the time Harvell wrote the letter being discussed.

recalled that Petitioner and his counsel discussed Patricia Arnold, a man named George Todd, and Trevor Harvell.  Ex. O at 29.

Petitioner testified at the evidentiary hearing that he asked trial counsel about the potential witnesses, including Harvell, whom Petitioner testified he asked counsel to call.  Petitioner said counsel responded, "[T]hey don't pay me to look up no witnesses.  They simply paid me to send you to trial, to go to trial."  Ex. O at 33-34.  Petitioner said he did not give the Harvell letter to trial counsel Ward because "[h]e never come to see me to pick it up," but that he had given it to his former counsel Crowley.  Ex. O at 35-36.  Petitioner testified, without being specific about dates, "I never got to tell him [Ward] about Mr. Harvell. I said I had witnesses who will appear on my behalf."  Ex. O at 36.  He said Ward asked him "what witness" but Petitioner never told him about Trevor Harvell.  Ex. O at 37.  Petitioner testified that during voir dire when he raised the issue of witnesses with counsel, he did not tell counsel about Harvell, but told him "I had a sworn affidavit.  I didn't tell him Trevor's name, no, sir, I didn't, not if I can remember I didn't."  Ex. O at 37-38.  Nor did Petitioner tell counsel about what was in the sworn affidavit.  Ex. O at 39.

Trial counsel Zachary Ward testified at the evidentiary hearing that he took over representation of Petitioner as conflict counsel from public

defender Dennis Crowley.  Ex. O at 42.  He said he requested all the

materials that the public defender's office had pertaining to Petitioner but

did not get a copy of the Harvell letter.  Ex. O at 43.  Ward testified that

Petitioner mentioned a "Trevor Harvey" as a possible witness, but he could

not be located.  Ex. O at 43.  He believed that if he had seen the name

"Trevor Harvell" on the jail records, he would had understood that to be the

same person mentioned by Petitioner.  Ex. O at 53.

Trial counsel was told that the possible witnesses could testify that

the victim was "generally dishonest" but counsel knew that was not

evidence that could be used.  Ex. O at 44.  Counsel said if he had been

provided with the letter he would definitely have attempted to talk with

Harvell about the statements if he could have located him.  He did not know

what further steps he could have taken to locate Harvell, however, because

there was no listing of an address.  Ex. O at 44-45.

Ward said he was aware of potential witnesses Webb and Arnold, but

he believed their testimony would have tended to support the State's case

because they saw Petitioner with the victim.  He said, "That's not

particularly helpful in defending a case when your client is charged with

luring a kid into a trailer and then lewd and lascivious acts of molestation

occurs, to call defense witnesses to put the kid in the trailer with your client.

I didn't - - I don't know if I didn't - - I would have said you didn't need them,

but certainly didn't want them."  Ex. O at 45-46.  In his evaluation of the

witnesses suggested to him, and who he was able to "check out," Ward

said they did not provide any beneficial testimony.  Ex. O at 47.  He

remembers locating and speaking with Patricia Arnold but did not think her

testimony would be helpful.  Ex. O at 47.  As to his expressed reluctance to

track down witnesses without any idea of their location, he agreed he may

have told Petitioner something to the effect of him not being an investigator

or detective and that if a witness is suggested, he needed some idea of

their location.  Ex. O at 48.  Ward denied ever being told of the substance

of the Harvell letter or affidavit or any information about his location.  Ex. O

at 49.

On cross-examination, Ward agreed that there was often difficulty in

getting all necessary information from the public defender's office for cases

assigned to conflict counsel, and he was sure he never got a copy of the

Harvell letter from the public defender.  Ex. O at 50.  Ward testified that the

information in letter could have been potentially significant, but "after

hearing his [Harvell's] testimony, which was not nearly as strong as the

letter indicates, I don't think that - - that would not have been the straw that

broke the camel's back, in my judgment.  But then again, I believe Mr.

Tharpe; my jury did not."  Ex. O at 52.

Based on this testimony, the post-conviction court's determination

that trial counsel was not ineffective has not been shown to be

unreasonable.  Counsel testified that he was never informed about the

Harvell letter, and that he made the strategic decision not to call Patricia

Arnold because her testimony, as he was aware of it, would have placed

Petitioner and the victim together.  The post-conviction court found trial

counsel would not likely have called Harvell as a witness because of his

ambiguous testimony and extensive criminal record, and that Ward decided

not to call the other witnesses because, although they might impugn the

accuser's general veracity, they also placed the accuser alone with Mr.

Tharpe.  Ex. Q.  This ruling indicates that the court found trial counsel's

actions to be strategic choices.  Whether a particular decision by counsel

was strategic is a question of fact.  Hardwick v. Crosby, 320 F.3d 1127,

1163 (11th Cir. 2003).  Whether the strategy was reasonable is a question

of law.  *Id.*  Petitioner must overcome the strong presumption that counsel's

conduct falls within the wide range of reasonable professional conduct.

Strickland, 466 U.S. at 689.  The state court's resolution of that issue

comes with a strong presumption of correctness, and Petitioner has not

shown that strategy was unreasonable in light of the facts. *See* <u>Cullen</u>, 563 U.S. at 181.

The <u>Strickland</u> standard is a general one and a state court has great latitude in determining if the Petitioner has satisfied the standard. <u>Knowles</u>, 556 U.S. at 123. Moreover, "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." <u>Strickland</u>, 466 U.S. at 691. The testimony of both trial counsel and Petitioner disclosed that Petitioner did not directly inform trial counsel about the Harvell letter or what it contained. Counsel attempted to locate the witness referred to as "Trevor Harvey," but was given no address or help in locating him. Counsel made the decision that none of the witnesses he was made aware of by Petitioner would provide effective defense testimony. Nothing presented in the evidentiary hearing contradicts counsel's decisions in this regard.

Petitioner did not present Arnold to testify at the evidentiary hearing and nothing was presented to refute trial counsel's testimony that he thought her testimony would not be helpful. As the post-conviction court found, Harvell's testimony did not bear out what was in the letter that he gave to Petitioner. Harvell testified several times that all the victim told him was that he was the reason Petitioner went to jail. He testified the victim

said, "I'm the one that put him in there, because I found out he was a sex offender. That's pretty much the extent of the conversation." Ex. O at 13. He was firm in his testimony that the victim told him nothing else.

The state court also found that Petitioner did not present evidence leading to a conclusion that but for counsel's failure to present these additional witnesses, there was a reasonable probability of a different outcome. Ex. Q. The jury heard that the victim burglarized Petitioner's mobile home after he was jailed, providing some proof of a motive to lie to have Petitioner jailed. The jury also heard testimony from Petitioner that the victim was the sexual aggressor in the incident. However, Petitioner admitted during his testimony having been convicted of several prior felonies, and Detective Steven Swier testified that during the interview with Petitioner, he told the officer that the victim had exposed himself and Petitioner offered to suck the victim's penis, but the victim said no. Ex. C at 58, 60. Even though Petitioner testified at trial that he never made the statement to Swier, Ex. C at 89, and that he never made such an offer to T.H., the jury had before it evidence from the detective's interview that provided a basis to convict petitioner of at least one of the counts alleged against him. Harvell's testimony and that of the other witnesses Petitioner complains were not called would not have provided a basis for the jury to

find Petitioner not guilty in light of the testimony of the victim and the detective.  Prejudice under the <u>Strickland</u> standard has not been shown.

Petitioner has failed to demonstrate that the state court's adjudication of this claim is contrary to, or involving an unreasonable application of, <u>Strickland</u> or any other federal law as established by the Supreme Court as required by 28 U.S.C. 2254(d).  This Court's review "is limited to the record that was before the state court that adjudicated the claim on the merits." <u>Cullen</u>, 131 S. Ct. at 1388.  Petitioner has also failed to show that the adjudication of this claim by the state court resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

For all these reasons habeas relief on Ground 2 should be denied.

## Conclusion

Based on the foregoing, Petitioner Hubert Tharpe is not entitled to federal habeas relief.  Accordingly, the § 2254 petition (ECF No. 1) should be denied.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the

applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." Rule 11(b) provides that a timely notice of appeal must still be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (explaining substantial showing) (citation omitted). Therefore, the Court should deny a certificate of appealability.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." The parties shall make any argument as to whether a certificate should issue by objections to this Report and Recommendation.

Leave to appeal in forma pauperis should also be denied. *See* Fed. R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is filed, the court may certify appeal is not in good faith or party is not otherwise entitled to appeal in forma pauperis).

## **Recommendation**

It is therefore respectfully **RECOMMENDED** that the Court **DENY** the § 2254 petition (ECF No. 1). It is further **RECOMMENDED** that a certificate

of appealability be **DENIED** and that leave to appeal in forma pauperis be

**DENIED**.

**IN CHAMBERS** at Tallahassee, Florida, on November 22, 2016.


S/ Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.**